UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET MAZUR and MICHAEL MAZUR,

      Plaintiffs,                               Civil No. 09-13371
                                               Hon. John Corbett O'Meara
            v.                            Magistrate Judge Donald Scheer

WASHINGTON MUTUAL BANK, F.A.,

      Defendant.

_____/

**OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [14] AND GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [10]**

In this consumer lending case, Plaintiffs assert that Washington Mutual Bank, F.A. ("WaMu") failed to adequately inform them of the ramifications of an adjustable rate home loan, and has broken its promise to modify that loan to one with a fixed rate. As a result of this and other allegedly wrongful acts during loan processing, Plaintiffs ask that the Court reform or rescind the promissory notes and accompanying mortgages and award them damages. Presently before the Court is JPMorgan Chase Bank, N.A.'s ("Chase")[1] Motion to Dismiss and/or for Summary Judgment (Dkt. 10) and Chase's Objection (Dkt. 15) to the Magistrate Judge's Report and

_____

[1]As will be discussed, Chase, while not a named defendant, is the present holder of the promissory notes and accompanying mortgages at issue. Chase has properly appeared in this case to protect its interest in the loans and mortgages. *See Zion v. Washington Mut. Bank*, No. 09-13967, 2010 WL 2560065, at *1 n. 1 (E.D. Mich. 2010) ("Although Plaintiffs sued Washington Mutual Bank ("WaMu"), JPMorgan Chase Bank ("Chase") is the real party in interest. Chase purchased some of WaMu's assets from the Federal Deposit Insurance Corporation, acting as receiver for WaMu since September 25, 2008.").

Recommendation on that Motion (Dkt. 14).  For the reasons set forth below, the Court REJECTS

the Magistrate Judge's Report, and GRANTS Chase's Motion to Dismiss and/or for Summary

Judgment ("Motion").  Further, the Court *sua sponte* dismisses all claims against WaMu for lack of

subject matter jurisdiction.

## I.  BACKGROUND

### A.  Factual Background and Plaintiffs' Allegations

At the heart of the instant dispute are a pair of loan agreements between Plaintiff Janet Mazur

and Washington Mutual Bank executed on October 13, 2006.  Under the "Senior Loan," WaMu

provided Janet Mazur $999,999.00, with repayment based on an adjustable interest rate.  (Dkt. 10,

Chase's Mot. Ex. F.)  The funds from the Senior Loan were used to (1) refinance Plaintiffs' existing

home loan,[2] (2) pay off $85,176.00 of non-mortgage debt, and (3) provide Plaintiffs with $50,833.79

in cash.  (Chase's Mot. at 2, Ex. E.)  The second loan was a fixed-interest-rate home equity line of

credit ("HELOC") with a credit limit of $124,876.00. (Dkt. 1-2, Compl. Ex. 2.)

Plaintiff Janet Mazur, along with her husband, Plaintiff Michael Mazur, secured these two

loans by encumbering their residence in Grosse Pointe Shores, Michigan ("Property") with a pair

of mortgages.  (Chase's Mot. Exs. G, I.)  It appears that Plaintiffs are now having difficulty making

the monthly payments on the loan(s), but foreclosure proceedings have not been initiated.  (Compl.

¶ 10; Pls.' Resp. at 10.)

The gravamen of the Mazurs' Complaint is that WaMu never informed them of "the meaning

---

[2]In 1999, Plaintiffs purchased their residence in Grosse Pointe Shores, Michigan.  This
$800,000.00 purchase was funded by a loan from non-party IndyMac Bank.  (Compl. ¶ 2; Chase's
Mot. at 2, Ex. D.)

of an 'ARM' or 'Adjustable' mortgage," and that because a "first mortgage"[3] was a fixed-rate loan, WaMu assured them that the adjustable-rate loan would eventually be consolidated with that "first mortgage" to protect Plaintiffs against possible rate increases.  (Compl. ¶¶ 9, 28.)  Despite this promise, and despite obtaining financing to "remit payment to Defendant at the current market value" of the Property, WaMu (and/or Chase) has denied their requests to "adjust the mortgage." (Compl. ¶¶ 11-14).  As a result, Plaintiffs have allegedly "suffered damages in paying more for this mortgage than they initially understood."  (Pls.' Resp. at 10.)

The Mazurs further allege that WaMu is at fault for having knowingly approved a loan to unqualified applicants.  Specifically, Plaintiffs assert that WaMu instructed them to overstate their income on their loan application, or at least knew that they had done so.  (Compl. ¶¶ 10, 16, 23.) In addition, Plaintiffs assert that WaMu failed to provide them with copies of unspecified "mortgage documents" back in October 2006.  (Compl. ¶¶ 17-18.)

Based on these allegations, Plaintiffs have brought four state-law claims against WaMu: negligence (Count I), breach of fiduciary duty (Count II), violation of the Michigan Consumer Protection Act (Count III), and predatory lending (Count IV).  (Compl. ¶¶ 15-32.)  Plaintiffs ask that this Court issue an injunction preventing eviction from the Property, reform or rescind the note and mortgage between the parties, and "disgorge all interest payments so wrongfully obtained from Plaintiffs in connection with [t]his improper [n]ote and [m]ortgage."  (Compl. at 10.)

---

[3]Neither Plaintiffs' Complaint nor responsive briefing explains what this "first mortgage" refers to.  Plaintiffs are likely referring to the 1999 IndyMac Bank loan, but may also be referencing the HELOC from WaMu.

3

### B.  Procedural History

On July 6, 2009, Plaintiffs filed this suit against WaMu in Wayne County Circuit Court. (Dkt. 1, Not. Removal ¶ 1.)  Chase, asserting that it is the real party in interest in this action, removed the case to this Court on August 26, 2009, on the basis of diversity jurisdiction.[4]  (*See* Not. Removal ¶¶ 4-5.)

On February 1, 2010, Chase filed the present Motion to Dismiss and/or for Summary Judgment.  (Dkt. 10.)  On August 5, 2010, pursuant to an Order of Referral from this Court (Dkt. 3), the Magistrate Judge issued a Report and Recommendation in which he recommended that this case be remanded to the Wayne County Circuit Court because Chase's removal was without the consent of WaMu.  (Dkt. 14, Report at 1.)  On August 19, 2010, Chase filed its Objection to the Magistrate's Report, asserting that the recommendation to remand is erroneous because "WaMu was never a proper party defendant in this case [as] it did not exist at the time Plaintiffs filed their Complaint."  (Chase's Obj. at 3.)  Plaintiffs have not filed a response to Chase's Objection.

## II.   CHASE'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### A.  Standard of Review of a Magistrate's Report and Recommendation

The filing of timely objections to a magistrate judge's report and recommendation requires the district court to "make a *de novo* determination of those portions of the report or specified

---

[4]Plaintiffs admit that they reside in Michigan (Compl. ¶ 2), and it appears, based on the very nature of this suit, that they have the requisite intent to remain in Michigan indefinitely.  Chase asserts that it is a national banking association with its principal place of business and principal office in Ohio.  (Not. Removal ¶ 4).  Subject matter jurisdiction has not been challenged, and it appears that jurisdiction is proper on the basis of diversity of citizenship.  *See* 28 U.S.C. § 1332; 28 U.S.C. § 1348 ("All national banking associations shall be deemed citizens of the States in which they are respectively located.").

4

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  In completing its *de novo* review, a district court "may . . . reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### B.  The Magistrate Judge's Recommendation to Remand

Relying on 28 U.S.C. § 1446 and accompanying case law, the Magistrate Judge concluded that this case was improperly removed from state court because the removing party, Chase, is not a defendant in this case, and because Chase did not obtain consent from WaMu to remove to federal court.  (Report at 3, 7, 9.)  Citing *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 579-80 (1954), he reasoned that "it is well established that federal jurisdiction may be invoked by the process of removal only by a defendant," and that in this case, "[t]here is not evidence or allegation that Chase was at any time a Defendant in the state action."  (*Id.* at 7.)  The Magistrate Judge further concluded that there is "no indication in Chase's Notice of Removal that WaMu, the only Defendant in the state case, has consented to removal."  (*Id.*)  As such, he recommended that this Court remand this case to the Wayne County Circuit Court.[5]  (*Id.* at 1.)

### C.  The Court Rejects the Magistrate Judge's Recommendation to Remand

Federal courts have derived a rule of unanimity from 28 U.S.C. § 1446, which sets forth the procedures for removing a case filed in state court to federal court.  *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003).  Under this rule of unanimity, "all defendants must join in a petition to remove a state case to federal court."  *Id.*  In this case, as the Magistrate Judge noted, nothing in the record suggests that WaMu, the named defendant in this case, consented to Chase's

---

[5]In the alternative, the Magistrate Judge recommended that the Complaint be dismissed only as against Chase.  (Report at 9.)

5

removal.

However, it is also well-settled that "technical defects in the removal procedure, such as a breach of the rule of unanimity, may not be raised *sua sponte*, and must be raised by a party within thirty days of removal or they are waived." *Loftis*, 342 F.3d at 516. The relevant portion of the removal statute provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). In *Page v. City of Southfield*, the Sixth Circuit Court of Appeals interpreted these two sentences of section 1447(c) as delineating a court's role when remanding based on lack of subject matter jurisdiction as opposed to procedural defect: the former may be raised by the court on its own accord, but the latter may not. 45 F.3d 128, 133 (6th Cir. 1995). In support of its interpretation, the Court of Appeals reasoned that:

> A plaintiff may forgive the procedural defect and accept the defendant's preference of a federal forum. A district court should not interfere with an agreed upon forum until the plaintiff, by motion, indicates an objection to the removal procedure or the court determines that subject matter jurisdiction is lacking.

*Id.* at 134. In short then, "[section] 1447(c) does not authorize *sua sponte* remands for purely procedural defects." *Id.* at 133.

In this case, as Chase points out in its Objection, Plaintiffs have not challenged removal or filed a motion to remand. In fact, the Magistrate Judge recognized that "Plaintiffs have not filed a Petition for Remand, and have responded to Chase's dispositive Motion." (Report at 9.) These facts notwithstanding, the Magistrate Judge interpreted Plaintiffs' argument that they sued WaMu as

6

opposed to Chase as "the functional equivalent of an objection to the removal of the case to this court." (Report at 9.)  The Court disagrees with the Magistrate Judge that Plaintiffs' statement was made to contest removal.  Rather, Plaintiffs' argument that they have only sued WaMu was a direct response to Chase's argument that it is not liable for WaMu's alleged misconduct.[6]  (*See* Pls.' Resp. at 5.)  Because the defect in removal was not raised on a motion by Plaintiffs, remand is not proper.[7]

---

[6]Specifically, in their moving papers, Chase argued that it was not the proper defendant for any claim by Plaintiffs seeking monetary damages because a provision in a Purchase and Assumption Agreement limited the liability that Chase would inherit from WaMu.  (Chase's Mot. at 4-5.)  Only in response to this argument did Plaintiffs make the following counter-argument:

> [In] [w]hat appears to be a red herring, Defendant submits that Chase is not liable because it is not the proper party.  It submits that it had a purchase and assumption agreement with the Federal Deposit Insurance Corporation that Chase would not be held liable for Washington Mutual's liabilities to borrowers.  *While that may true, [sic] Plaintiffs however, filed their complaint against Washington Mutual—not Chase.*

(Pls.' Resp. at 5 (emphasis added).)

[7]Moreover, even if Plaintiffs did in fact challenge the removal procedures in their Response to Chase's Motion, that brief was filed almost six months after this case was removed to federal court.  (Dkt. 12.)  By that time, Plaintiffs had long waived their right to have this case remanded because of procedural defect.  28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *accord Page*, 45 F.3d at 133.  Thus, the Court also rejects the Magistrate Judge's recommendation to remand on this alternative basis.

## III.  CHASE'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

### A.  Legal Standards

#### 1.  Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)[8]

The Federal Rules permit a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding whether a plaintiff has stated a cognizable claim, a court accepts as true all well-pleaded factual allegations, and reads the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that when a complaint is attacked pursuant to 12(b)(6), "a formulaic recitation of the elements of a cause of action will not do").  Thus, a complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and must also "state a claim to relief that is

---

[8]Chase has filed a Motion to Dismiss pursuant to Rule 12(b)(6) and/or For Summary Judgment pursuant to Rule 56(c).  Technically, it is improper to file a Rule 12(b)(6) motion after an answer has been filed.  *See* Fed. R. Civ. P. 12(b); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 435 n.1 (6th Cir. 1988).  Rather, once a defendant has answered, Rule 12(c) becomes the proper tool to assert that a complaint fails to state a claim upon which relief may be granted.  Ultimately, Chase's procedural hiccup does not alter the Court's analysis.  Where, as here, the only defect in a Rule 12(b)(6) motion is that it was filed post-answer, Rule 12(b)(6) legal standards still control.  *Scheid*, 859 F.2d at 435 n.1; *see* 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2010) ("The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings. . . .  The mere fact that these [Rule 12(b)] procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters. In this context, Rule 12(c) is merely serving as an auxiliary device that enables a party to assert certain procedural defenses after the close of the pleadings.").

plausible on its face." *Twombly*, 550 U.S. at 555, 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to speculative. *See Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### 2. *Motion for Summary Judgment Pursuant to Rule 56(c)*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. In particular,

> The respondent must do more than simply show that there is some metaphysical doubt as to the material facts. Further, where the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996) (internal alterations and citations omitted).

Ultimately, the Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B. Plaintiffs' Claims Against Chase for Damages[9]

On September 25, 2008, the Office of Thrift Supervision determined that it was likely that WaMu "would be unable to pay its obligations or meet its depositors' demands in the normal course of business," so it closed WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. (Chase's Obj. at 6, Ex. G.) That same day, the FDIC sold some of WaMu's assets to Chase pursuant to a Purchase and Assumption Agreement ("PAA"). (Chase's Obj. Ex. H.) Plaintiffs do not dispute that Chase acquired their loans and accompanying mortgages under the PAA.

Chase asserts that to the extent Plaintiffs are seeking to recover monetary damages from Chase in this suit, the PAA bars Plaintiffs' claims. The Court agrees. In relevant part, the PAA states:

---

[9]As eluded to in Part II, *supra*, Plaintiffs have filed suit only against WaMu. As will be discussed, this is not the proper forum for asserting claims against WaMu. Further, because Chase is the successor-in-interest to WaMu with respect to Plaintiffs' loans and mortgages, it is proper to treat Plaintiffs' claims as being asserted against Chase. *See Shnell v. Washington Mut. Bank*, No. 09-10216, 2009 WL 4646908, at *2 n.1 (E.D. Mich. Dec. 8, 2009) (explaining, in a similar case brought against Washington Mutual but not naming Chase as a defendant, that "WaMu recorded the mortgage. However, because Chase has succeeded to all of WaMu's rights, it is appropriate to refer to Chase."); *Zion v. Washington Mut. Bank*, No. 09-13967, 2010 WL 2560065, at *1 n. 1 (E.D. Mich. 2010). The Court will therefore refer to Chase even when discussing conduct that occurred during loan processing.

> [A]ny liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, . . . related in any way to any loan or commitment to lend made by [WaMu] prior to [its] failure, . . . or otherwise arising in connection with the [WaMu's] lending or loan purchase activities are specifically not assumed by [Chase].

(Chase's Obj. Ex. H § 2.5).

Several federal courts have already held that in purchasing WaMu's assets and liabilities from the FDIC under the PAA, Chase did not assume liability for WaMu's alleged misconduct in procuring loans. *E.g.*, *Rosenfeld v. JPMorgan Chase Bank, N.A.*, __ F. Supp. 2d __, No. 09-6070, 2010 WL 3155808, at *4 (N.D. Cal. Aug 9, 2010); *Harajli v. Washington Mut. Bank*, No. 09-14598, 2010 WL 2813281, at *3 (E.D. Mich. July 16, 2010); *Elman v. JPMorgan Chase Bank, N.A.*, No. PJM 10-31, 2010 WL 2813351, at *3 (D. Md. July 13, 2010) (holding that under Section 2.5 of the PAA "Chase owed no contractual obligation to [borrower] with regard to WaMu's failure to provide him with requested interest rate resets."); *Grealish v. Washington Mut. Bank FA*, No. 08-CV-763, 2009 WL 2170044, at *2 (D. Utah July 20, 2009) ("Section 2.5 of the [PAA] clearly establishes that any borrower claims 'related in *any* way to *any* loan' made by WaMu prior to September 25, 2008, were not assumed by Chase when it purchased the assets of WaMu from the FDIC Receiver.").

The Court agrees with these prior interpretations of Section 2.5 of the PAA, and holds that Plaintiffs' claims against Chase for monetary relief fail as a matter of law.

### C.  Plaintiffs' Claims Against Chase for Equitable Relief

Chase does not assert that Plaintiffs' claims for equitable relief are barred by the PAA. Further, Chase concedes that as the present holder of the Senior Loan, the HELOC agreement, and accompanying mortgages, it is the proper party to defend against Plaintiffs' present effort to rescind

11

or reform the loan agreements and mortgages.  (Chase's Obj. at 8-9.)  Thus, the Court now turns to

Chase's Motion as it pertains to Plaintiffs' claims for equitable relief.

### 1. Count I: Negligence

To establish a prima facie case of negligence under Michigan law, a plaintiff has the burden

of showing "(1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the

duty, (3) that the defendant's breach of the duty caused the plaintiff injuries, and (4) that the plaintiff

suffered damages."  *Lelito v. Monroe*, 729 N.W.2d 564, 566 (Mich. Ct. App. 2006).

The issue of whether a defendant owes a legal duty to plaintiff is threshold as "[t]here can

be no actionable negligence if no duty exists."  *Id.* (citing *Hakari v. Ski Brule Inc.*, 584 N.W.2d 345,

348-49 (Mich. Ct. App. 1998)).  The requisite duty of care is to be established by the trial court as

a matter of law.  *Riddle v. McLouth Steel Products Corp.*, 485 N.W.2d 676, 681 (Mich. 1992).

Plaintiffs assert that Chase (1) had a duty under Mich. Comp. Laws § 600.3208 to verify information

on Plaintiffs' mortgage documents; (2) had a duty to verify that Plaintiffs could make the required

loan payments; and (3) owed Plaintiffs the duties prescribed by the Truth-in-Lending Act, 15 U.S.C.

§ 1639.  (Pls.' Resp. at 6-8.)  Chase disagrees, and, relying primarily on *Ulrich v. Federal Land

Bank of St. Paul*, 480 N.W.2d 910 (Mich. Ct. App. 1991), asserts that "Chase did not owe Plaintiffs

a duty by virtue of the lender/borrower relationship."  (Chase's Mot. at 7.)  The Court finds that

Chase did not owe Plaintiffs a duty of care under any of Plaintiff's three theories.

First, Plaintiffs allege that "Defendant owed [them] a duty pursuant to pursuant to MCL

600.3208 to ensure that Plaintiffs' mortgage documents where [sic] correctly stated at the time the

mortgage was underwritten and subsequently approved for the subject property."  (Compl. ¶ 17.)

However, Mich. Comp. Laws § 600.3208 is a notice provision of Michigan's *foreclosure*-by-

advertisement statute.[10]  The Court fails to see how a foreclosure statute establishes a duty of care "at the time the mortgage was underwritten"—lending and foreclosure are distinct events occurring at different times.  Moreover, it is undisputed that foreclosure proceedings have not been initiated against Plaintiffs.  (*See* Compl. ¶¶ 6-14; Pls.' Resp. at 10.)  Accordingly, Mich. Comp. Laws § 600.3208 did not impose a duty upon Chase to ensure that Plaintiffs' mortgage documents were correctly stated when the mortgage was underwritten.

Second, Plaintiffs allege that Chase was under a duty to determine whether Plaintiffs were in fact qualified for their loan.  (*See* Compl. ¶ 16.)  Specifically, Plaintiffs aver that "Defendant knew or should have known that Plaintiff's income was over stated [sic] and other documents including, but not limited to closing documents did not match information reported related [sic] to the mortgage."  (*Id.*)  Under Michigan law, however, a lender does not owe this type of investigatory duty to a borrower.

As in this case, the plaintiffs-borrowers in *Ulrich v. Federal Land Bank of St. Paul* alleged that the lender and affiliated entities owed them a duty to verify their ability to repay the loan:

> "[d]efendants . . . assumed a duty to thoroughly research the facts underlying the advice and recommendations given them to [sic]

---

[10]In full, Mich. Comp. Laws § 600.3208 states:

> Notice that the mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given by publishing the same for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated. If no newspaper is published in the county, the notice shall be published in a newspaper published in an adjacent county.  In every case within 15 days after the first publication of the notice, a true copy shall be posted in a conspicuous place upon any part of the premises described in the notice.

> plaintiffs before the $220,000 [mortgage-backed loan] was entered [sic]. With the exercise of reasonable care, defendants would have know [sic] that plaintiffs' farm operation productivity was not nearly sufficient to generate the cash flow necessary to service a $220,000 loan in 1980."

480 N.W.2d 910, 913 (Mich. Ct. App. 1991). Thus, the issue before the Michigan Court of Appeals in *Ulrich* is nearly identical to that posed here: "whether [the lender] had a legal duty to exercise reasonable care in determining [applicants'] eligibility for a loan." *Id.* The court concluded that, at least on the facts before it, a lender had no such duty. *Id.* at 913.

As indicated by *Ulrich*, a Michigan court would not impose a legal duty on Chase to determine whether Plaintiffs were actually qualified for their loans. The Court therefore declines Plaintiffs' invitation to do so. *See Yaldu v. Bank of America Corp.*, 700 F. Supp. 2d 832, 846 (E.D. Mich. 2010) ("[T]he negligent representation count in this case fails with respect to the Bank of America because [under Michigan law] a lender does not owe a duty of care to a loan applicant."); *Noel v. Fleet Fin., Inc.*, 971 F. Supp. 1102, 1115 (E.D. Mich. 1997) (reasoning, based on *Ulrich*, that Michigan courts would not impose a duty of care on lenders with respect to loan applicants).

Finally, Plaintiffs assert—for the first time in their Response to Chase's Motion—that "the Truth-in-Lending Act creates a duty of disclosure of information pursuant to 15 U.S.C. § 1639." (Pls.' Resp. at 8.) The provision of the TILA relied upon by Plaintiffs—15 U.S.C. § 1639—was added to that Act by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"). The purpose of this amendment was to "afford greater protections and impose additional disclosure requirements for 'high-cost' or 'high-rate' loans." *Yaldu v. Bank of America Corp.*, 700 F. Supp. 2d 832, (E.D. Mich. 2010); *accord* S. Rep. No. 103-169, at 21 (1993) ("The bill amends the Truth in Lending Act to define a class of non-purchase, non-construction, closed-end loans with high interest

rates or upfront fees as 'High Cost Mortgages.'").  Thus, the duties that Plaintiffs allege Chase owed

them under the HOEPA could only be triggered if Plaintiffs' loans are "high cost" within the

meaning of the Act—i.e., when (1) the loan has a sufficiently high annual percentage rate ("APR");

or (2) points and fees payable at or before closing exceed the greater of eight percent of the total

loan amount or $400.00.  *Booker v. Wells Fargo Home Mortgage, Inc.*, 138 F. App'x 728, 730 (6th

Cir. 2005); 15 U.S.C. § 1602(aa).[11]

Plaintiffs have failed to plead that the either the Senior Loan or the HELOC loan are high-

cost within the meaning of 15 U.S.C. § 1602(aa).  The Complaint is void of facts suggesting that the

APR on the loans exceed, "by more than 10 percentage points[,] the yield on Treasury securities

having comparable periods of maturity" in September 2006.  Further, Plaintiffs have not alleged that

the total points and fees they paid at or before closing exceeded eight percent of the total loan

amount.  Accordingly, even assuming that Michigan courts would impose HOEPA duties upon

lenders under a negligence per se theory, Plaintiffs have not adequately pled that such a duty exists

---

[11]In particular, the relevant provision of HOEPA provides:

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if—
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of—
> > (i) 8 percent of the total loan amount; or
> > (ii) $400.

15 U.S.C. § 1602(aa)(1).

in this case.[12]

Because Plaintiffs have failed to sufficiently allege that they were owed a duty of care by Chase when they applied for and obtained the Senior Loan and HELOC, Plaintiffs' negligence claim fails to state a claim upon which relief may be granted.

### 2.  Count II: Breach of Fiduciary Duty

Although Count II of Plaintiffs' Complaint alleges a breach of fiduciary duty, the relief Plaintiffs seek for this alleged violation is monetary damages.  Accordingly, this claim is barred as against Chase per the PAA.  *See* Part III.B, *supra*.

To the extent that Count II could be construed as seeking equitable relief, a lender and borrower generally do not have a fiduciary relationship under Michigan law.  *See Farm Credit Servs. of Michigan's Heartland v. Weldon,* 591 N.W.2d 438, 447 (Mich. Ct. App. 1998) ("A fiduciary relationship, which generally does not arise within the lender-borrower context, exists when there

---

[12]In addition to moving to dismiss the Complaint for failure to state a claim, Chase has alternatively moved for summary judgment.  Under Rule 56, the Court may consider the uncontroverted evidence attached to Chase's Motion.  Although neither party has analyzed the issue, the loan documents produced by Chase, the authenticity or content of which has not been challenged by Plaintiffs, indicate that neither the Senior Loan nor the HELOC would be considered high-cost within the meaning of HOEPA.  The Senior Loan, while having a variable rate, appears to have a cap of 10.3% (Chase's Mot. Ex. F at 2), and thus does not have an APR that exceeds by 10% the yield on September 2006 Treasury securities having comparable periods of maturity.  *See* 15 U.S.C. § 1602(aa)(1)(A).  In fact, the applicable yield from that time period is in the 4-5% range.  *See* Federal Reserve Statistical Release, H.15 Selected Interest Rates, http://www.federalreserve.gov/ RELEASES/H15/ (last visited Sep. 27, 2010).  The HELOC loan has a fixed APR of 9.190% and is therefore also below the APR threshold for high-cost loans.  Regarding the alternate "points and fees" test, the Settlement Statement in connection with the two loans provides that, less the $85,176.00 provided to Plaintiffs to pay off non-mortgage debt, the total settlement charges are far below 8% of a million dollar loan.  (*See* Chase's Mot. Ex. E.)  Thus, the loans would also fail to qualify as high-cost under the alternate test set forth in 15 U.S.C. § 1602(aa)(1)(B).  Accordingly, it appears that even if Plaintiffs had properly pled that the loans qualify under HOEPA, those allegations would be contradicted by uncontroverted evidence, and summary judgment would be proper.

16

is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another."); *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998) ("Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations."). Further, a borrower's naivety, inexperience, or reliance on a lender, without more, does not create a fiduciary relationship. *Ulrich v. Federal Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991).

In this case, Plaintiffs have pled that "[b]y negotiating with a lender to handle real property, including but not limited to any mortgage documents securing title commitment and insurance to declare title information was correct, among other things, a fiduciary relationship existed between Plaintiffs and . . . Defendant." (Compl. ¶ 21.)  In their Response to Chase's Motion, Plaintiffs further assert that they " trusted and relied upon the expertise of Defendant when applying for the loan," and that during the loan process they provided Chase with "personal and financial information."  (Pls.' Resp. at 11.)  Construing these allegations in the light most favorable to Plaintiffs, they suggest that Plaintiffs were naive or inexperienced borrowers, and that they relied upon Chase to complete certain standard loan processing tasks.  Under Michigan law this does not make Chase their fiduciary.  *See Weldon,* 591 N.W.2d at 447; *Ulrich*, 480 N.W.2d at 911. Accordingly, Count II is properly dismissed for failure to state a claim upon which relief may be granted.

### 3. *Count III: Violation of the Michigan Consumer Protection Act*

Count III of Plaintiffs' Complaint alleges that Chase has violated various provisions of the Michigan Consumer Protection Act ("MCPA"),  Mich. Comp. Laws § 445.901, *et seq*.  The Court need not pause at great length upon this claim.

First, as with Count II, Plaintiffs only seek monetary relief for alleged violations of the MCPA; thus, for the reasons discussed, the MCPA claims against Chase are barred by the PAA.

Second, even assuming that Plaintiffs seek equitable relief under the MCPA, their MCPA claims still fail because a lender's specific misconduct during a residential mortgage loan transaction authorized by law is exempted from MCPA liability. In particular, the MCPA does not apply to "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of . . . the United States." Mich. Comp. Laws § 445.904(1)(a). The Michigan Supreme Court has explained that "the relevant inquiry [for the exemption under section 445.904(1)(a)] is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the *general transaction* is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999) (emphasis added); *see also Sharara v. Bank of America, N.A.*, No. 09-14030, 2010 WL 707375, at *4 (E.D. Mich. Feb. 23, 2010) (dismissing MCPA claim against Bank of America; holding that under Michigan law residential mortgage loan transactions qualify for the exemption under Mich. Comp. Laws § 445.904(1)(a)); *Berry v. Bank of America, N.A.*, No. 09-14081, 2009 WL 4950463, at *6-7 (E.D. Mich. Dec. 16, 2009) (same).

Here, Plaintiffs do not dispute that Chase is a national banking association regulated under federal law or that WaMu was a federally chartered savings bank. And, as Chase correctly asserts, while alleging specific misconduct, Plaintiffs have not pled that the general transaction—the procurement of residential mortgage loans—was not authorized by law. *See Newton v. Bank West*, 686 N.W.2d 491, 494 (Mich. Ct. App. 2004) ("It is abundantly clear . . . that federal savings banks making residential mortgage loans are engaged in transactions specifically authorized under laws

18

administered by a regulatory board or officers acting under United States statutes."). Accordingly, Count III is properly dismissed for failure to state a claim upon which relief may be granted.

### 4. Count IV: Predatory Lending

As Chase explains, it is well-settled in this district that predatory lending is not a viable cause of action under Michigan law. *E.g.*, *Sharara*, 2010 WL 707375, at *4 (citing *Saleh v. Home Loan Services, Inc.*, No. 09-10033, 2009 WL 2496682, at *2 n.1 (E.D. Mich. Aug. 17, 2009); *Swarich v. Onewest Bank, F.S.B.*, No. 09-13346, 2009 WL 4041947, at *5 (E.D. Mich. Nov. 20, 2009); *Beydoun v. Countrywide Home Loans, Inc., et al*, No. 09-10445, 2009 WL 1803198, at *4 (E.D. Mich. June 23, 2009)). Plaintiffs cite no contrary authority from a federal or Michigan court. Thus, Count IV is properly dismissed for failure to state a claim upon which relief may be granted.

## IV. PLAINTIFFS' CLAIMS AGAINST WASHINGTON MUTUAL

At the hearing before the Magistrate Judge and in their Response to Chase's Motion, Plaintiffs asserted that they have "filed [this] [C]omplaint against Washington Mutual—not Chase." (Pls.' Resp. at 5.) However, to the extent that Plaintiffs claims run against WaMu, this Court lacks subject matter jurisdiction to entertain them. As mentioned, in September 2008 WaMu was placed into receivership with the FDIC. Because of this status, 12 U.S.C. § 1821(d) details the procedures for resolving claims for WaMu's alleged misconduct. In particular, 12 U.S.C. § 1821(d)(13)(D)[13]

---

[13]This provision states, in relevant part,

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . . ; or
>> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

provides that federal courts lack jurisdiction over claims "of any depository institution for which the [FDIC] has been appointed receiver" until administrative procedures have been completed.  *See Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995) (citing 12 U.S.C. § 1821(d)(13)(D)(i)).  Plaintiffs fail to allege that they have exhausted the administrative process.  Accordingly, their claims against WaMu must be dismissed for lack of subject matter jurisdiction.  *Harajli*, 2010 WL 2813281, at *3 ("With respect to Plaintiff's claims against WaMu, this Court lacks subject matter jurisdiction over those claims. As previously indicated, the FDIC was appointed as receiver of WaMu.  Federal law details a mandatory procedure for all claims against a failed institution once a receiver is appointed." (citing 12 U.S.C. §§ 1821(d)(3)-(13)));  *see also Chavez v. California Reconveyance Co.*, No. 10-cv-00325, 2010 WL 2545006, at *5 (D. Nev. June 18, 2010) (dismissing, *sua sponte*, for lack of subject matter jurisdiction where plaintiffs did not alleged that they followed the administrative claims procedure under 12 U.S.C. § 1832(d));  *Tompkins v. Bank of America Nat'l Ass'n*, No. CV-09-2014, 2010 WL 396367, at *3 (D. Ariz. Jan. 28, 2010) (holding, in a consumer lending case involving Chase and WaMu, that WaMu was not a proper party due to WaMu's receivership status, and explaining that "[u]nless a plaintiff follows [the] procedures set forth in 12 U.S.C. § 1821(d), a district court lacks jurisdiction to resolve such a case.").

## V.  CONCLUSION

For the foregoing reasons, the Court REJECTS the Magistrate Judge's recommendation that this case be remanded to state court (Dkt. 14) and GRANTS Chase's Motion to Dismiss and/or for Summary Judgment (Dkt. 10).  Accordingly, Plaintiffs' claims against JP Morgan Chase Bank, N.A. are DISMISSED WITH PREJUDICE.  Further, the Court *sua sponte* DISMISSES WITHOUT

---

12 U.S.C. § 1821(d)(13)(D).

PREJUDICE Plaintiffs' claims against Washington Mutual Bank, F.A. for lack of subject matter

jurisdiction.

     **IT IS SO ORDERED.**

                                  s/John Corbett O'Meara
                                  United States District Judge


Date:  January 10, 2011




     I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, January 10, 2011, using the ECF system.


                                    s/William Barkholz
                                    Case Manager